NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**QUINN P. HARRINGTON, OSB#083544**
Assistant United States Attorney
Quinn.Harrington@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **6:06-cr-60011-AA-1** |
| | **6:22-cr-00134-AA-1** |
| v. | |
| | **GOVERNMENT'S SENTENCING** |
| **JOSEPH DIBEE,** | **MEMORANDUM** |
| **Defendant.** | |

## I.    Introduction

From 1996 to 2001, Joseph Dibee engaged in a conspiracy to commit arsons that

ultimately resulted in 16 arsons or attempted arsons that caused damages of over $20,000,000.

Although Mr. Dibee did not participate in as many arsons as some of his co-conspirators, his

conduct is aggravated by two main factors. First, at the time of the offenses, he was more

educated and older than some of his co-conspirators. Put simply, he knew better and cannot

**Government's Sentencing Memorandum** **Page 1**

blame the inexperience and naivete of youth. Second, he fled prosecution while his co-conspirators were prosecuted, sentenced, and served lengthy prison terms.

Mr. Dibee should not be rewarded with a lower sentence after fleeing accountability. The government requests that the Court sentence him to 87 months in prison.

## II.    Factual Background

### A.    The Offense Conduct

Mr. Dibee has pled guilty to two specific arsons: Cavel West in Oregon and the BLM Wild Horse Corral in California. The entire conspiracy, including the specific conduct of the co-conspirators, is discussed in greater detail in the prior sentencing memorandums associated with this case. *See e.g.* Sentencing Memorandum filed by USA as to Darren Todd Thurston, *United States v. McGowan*, Case No. 6:06-cr-60069, ECF #23 (D. Or. May 4, 2007) (also filed in numerous other case numbers and attached as EXHIBIT 2). Because the Court is very familiar with the history of this case and the prior defendants, this memorandum will focus on the two specific arsons in the plea agreement and on Mr. Dibee himself.

#### 1.    Cavel West

A co-conspirator recruited Mr. Dibee to help burn down the Cavel West packing company in Redmond, Oregon. PSR. ¶ 32. The co-conspirator met Mr. Dibee at an earlier protest and recruited Mr. Dibee to help plan and execute the arson. PSR. ¶ 32. Mr. Dibee went on a scouting trip. After the scouting trip, Mr. Dibee then told his co-conspirator that he could help burn down the facility but that they needed more people. PSR. ¶ 33.

On July 20, 1997, Mr. Dibee and a crew of co-conspirators returned to Cavel West. Mr. Dibee brought timers he created and a fuel mixture to Cavel West with the intent to burn it down.

PSR ¶ 34. Mr. Dibee personally drilled holes into the building to pour the fuel into it. PSR ¶ 34. The arson did not go smoothly. Mr. Dibee prematurely ignited one of the incendiary devices, the building caught fire, and the conspirators fled the scene. PSR¶ 34. The photograph below shows the results of Mr. Dibee's arson.



In a recent podcast, Mr. Dibee described starting the fire that burned down Cavel West. His description of the incident confirmed the accuracy of the government's investigation. He admitted that they had little control of the fire by describing the accidental ignition. He also admitted that the sight of the burning building was "terrifying." But he denied any responsibility for the fear his actions caused the community. Instead, he blamed the government for the fear from the numerous arsons caused by him and his co-conspirators. *Burn Wild, Episode 8: Just like the rest of us*, BBC SOUNDS (Oct. 25, 2022), https://www.bbc.co.uk/sounds/brand/p0cx6tw7.

/ / /

/ / /

**Government's Sentencing Memorandum**                                          **Page 3**

### 2.    BLM Wild Horse Corral

Four years after Cavel West, in 2001, Mr. Dibee joined another conspiracy to burn down another facility. This time he targeted the BLM Wild Horse Corral in Litchfield, California. PSR. ¶ 36.

The BLM facility in Litchfield, California was and is part of the BLM's efforts to protect wild horses through active management. Without management, wild horse populations can double in size every four years, threatening both the herd and the land itself. EXHIBIT 1. The BLM uses corrals to avoid overpopulation in a nonlethal manner, including fertility control and adoption. EXHIBIT 1.

Mr. Dibee played a significant role in organizing the action against Litchfield. He helped bring co-conspirators from Canada and hosted participants at his house where they built incendiary devices. PSR ¶ 37. Mr. Dibee was fully aware of the intended arson because his co-conspirators were building the incendiary devices at his house. ECF #431, Page 5.

Despite sitting for several interviews for a podcast series, Mr. Dibee did not describe his arson in Litchfield in those interviews. However, other co-conspirators described his leading role in the Litchfield action. One co-conspirator said that Mr. Dibee was the person who found Litchfield as a target and wanted to do an action there. TUBBS_302-00083.

Another co-conspirator said that Mr. Dibee was fully aware of the intended arson but argued against it at one point. LITCHFIELD_101. Regardless of any prior misgivings, she also said that Mr. Dibee directed her to work with another co-conspirator to set up the explosive devices. LITCHFIELD_102.

/ / /

**Government's Sentencing Memorandum**                                                          **Page 4**

The same co-conspirator described Mr. Dibee's attitude on the drive from Seattle to the arson. She said Mr. Dibee was often very cocky and bragged about actions he did on the drive to California. LITCHFIELD_100. She described how during the drive, Mr. Dibee spent time trying to calculate the monetary value of all of the property damage he did. LITCHFIELD_100.

On October 15, 2001, Mr. Dibee and his co-conspirators arrived at the Litchfield facility to release the horses and burn down the facility. PSR ¶ 36. They placed several incendiary devices around the facility. Mr. Dibee and his co-conspirators released horses by cutting fences and successfully burned down part of the facility, as seen in the picture taken during the fire:



/ / /

/ / /

**Government's Sentencing Memorandum**                                                    **Page 5**

The BLM facility in Litchfield is close to a highway (as depicted below). Cutting the fences and releasing the horses posed safety concerns for the horses and people traveling on the highway.



Several devices did not ignite. Photographs show that the group tried to blow up a vehicle and burn down as much of the facility as possible.

/ / /

/ / /

/ / /

**Government's Sentencing Memorandum**                                    **Page 6**



**Government's Sentencing Memorandum**                                    **Page 7**



**Government's Sentencing Memorandum**                                        **Page 8**

3.    Joseph Dibee Flees Prosecution

After learning of potential charges in 2005, Mr. Dibee fled. In an interview with a podcast, he bragged about his flight from justice. He said he sent his phone to Canada and instructed an associate to "light the phone up." *Burn Wild, Episode 4: Ghosts and myths*, BBC SOUNDS (Sep. 27, 2022), https://www.bbc.co.uk/sounds/brand/p0cx6tw7. He said he "had several cars" at the time because of his high paying job and "was a pretty good driver." *Id.* He claimed that he was being followed (there was actually no surveillance on Mr. Dibee or his phone at the time), and he "eventually lost them." *Id.*

Mr. Dibee moved to Syria. PSR ¶ 88. He lived under the al-Assad regime, and in the PSR, he has reported that he fled to Russia after his security detail confronted what he described as "American terrorists." PSR ¶ 88. It is unclear why he had a security detail, and it is unclear who he was describing as "American terrorists." According to records from Cuba, he told Cuban authorities he worked for Syrian Homeland Security. DIBEE_00028. According to Mr. Dibee, he fled to Russia around Fall of 2010. PSR ¶ 88.

Mr. Dibee lived in Russia until about 2018. PSR ¶ 89. He was arrested by Cuban authorities pursuant to an Interpol Red Notice on his way back to Russia after a trip to South America. The FBI then transported him from Havana, Cuba to Portland, Oregon where he finally made his first appearance in this case on August 10, 2018, about twelve years after his indictment. ECF # 244. Mr. Dibee was released from custody on January 12, 2021, meaning that he served approximately 29 months in custody.

/ / /

/ / /

B.     **The Plea Agreement & Guideline Computations**

Defendant agreed to plead guilty to three counts, and in exchange, the government will dismiss any remaining counts at sentencing. The government also will, subject to the limitations set forth in the agreement, recommend that defendant receive a three-level reduction for acceptance of responsibility.

The parties stipulated to the following guideline calculation, with the government agreeing to recommend the low-end of the resulting guideline calculation:

| Enhancement | Levels |
| --- | --- |
| Base—<br>USSG § 2X1.1(a)(2), 2K1.4(a)(1), and 2K2.1(a)(7) | 24 (not contested) |
| Departure/Variance for aggravating circumstances<br>USSG § 5K2.0 | 8 (not contested) |
| Acceptance of Responsibility—<br>USSG § 3E1.1 | -3 (not contested) |
| **Total Offense Level** | **29** |
| **Resulting Guideline Range** | **87-108** |

III.    **Argument**

A.     **Contested Guideline Issues**

There are no contested guidelines issues. ECF #431 ¶ 8.

B.     **Government's Recommended Sentence**

Mr. Dibee's conduct warrants a high sentence on its own merit. His conduct is aggravated when compared to his co-defendants because he fled from the charges and because his age and education compared to most of his co-conspirators give him no excuse for engaging in arson.

/ / /

/ / /

**Government's Sentencing Memorandum**                                                    **Page 10**

1.    Nature and Circumstances of the Offense

This Court said it best back in 2007:

> [F]ear and intimidation can play no part in changing the hearts and minds of people in a democracy. Let me say it again. Fear and intimidation can play no part in changing the hearts and minds of people in a democracy.

*United States v. Tubbs,* 6:06-cr-60070-AA, ECF #38-1 at 7:5-9 (D. Or. May 24, 2007).

Setting fires to help the environment is inherently an absurd concept. But the dangerousness and foolishness of Mr. Dibee's conduct has only become clearer with time.

Arson is inherently dangerous and presents a risk to life. No person was injured in the two arsons, but they easily could have been. By all accounts, both arsons did not go as planned, as is common with arsons, and could have easily injured the participants, first responders, or others in the area. Further, setting fires like the two arsons in this case presents additional dangers, including the risk of deadly wildfires. Mr. Dibee should be thankful that no one was hurt in his arsons. But that does not mean that that the arsons were not incredibly dangerous.

Mr. Dibee's actions were also foolish and futile. Setting fires, damaging property, and intimidating people is not a legitimate form of political activism. At least one of Mr. Dibee's co-conspirators, after accepting responsibility for her crimes and serving her sentence, came to a similar conclusion. While she surely has disagreements with the government in her case, she was reflective on the effects of her actions:

> We had all made our decision to do a different type of activism to remove ourselves from the above ground community. But it was not fair of us to not pay more attention to the impact our actions would have had on environmental activists. I think our action destroyed the local environmental movement.

*Burn Wild, Episode 6: The line*, BBC SOUNDS, at 11:00 (Oct. 11, 2022),

https://www.bbc.co.uk/sounds/brand/p0cx6tw7

**Government's Sentencing Memorandum**                                    **Page 11**

Mr. Dibee has no excuse for committing two arsons. His actions were not justified by his goals. His actions were not justified because no person was hurt. His actions were unjustifiable and endangered and threatened the community.

2.      The History and Characteristics of Mr. Dibee

Mr. Dibee's age and education, especially compared to his co-defendants, warrant a higher sentence. Mr. Dibee's flight from prosecution also warrants a higher sentence.

Unlike many offenders that appear before this Court, Mr. Dibee is well educated and has no history of substance abuse disorders or untreated mental health issues. He appears to have been raised in a supportive household that helped him attain a college degree and enter a field where he made a high salary. At the time of the Cavel West Arson, Mr. Dibee was 29 years old, held a Bachelor of Science Degree from Seattle University and an engineering license, and was employed at a consulting company that did work with Apple. At the time of the Litchfield arson, he was 33 years old. He worked for Microsoft pulling in a $150,000 salary.

Mr. Dibee was one of the only adults in the room. His background is not a mitigating factor, but instead an aggravating factor. Because he knew better.

Mr. Dibee also fled from the charges in this case. He shows no remorse for fleeing justice. To the contrary, he bragged about it on a podcast. While his co-conspirators were prosecuted, sentenced, and incarcerated, Mr. Dibee lived in two authoritarian countries with, at best, questionable environmental records. His sentence should hold him accountable for fleeing justice in this case.

/ / /

/ / /

**Government's Sentencing Memorandum**                                    **Page 12**

3.      An 87-Month Sentence Avoids Unwarranted Disparities with His Co-
Defendants

Mr. Dibee was one of the oldest members of the conspiracy, and now he is one of the last

members to face justice. He should not receive a lighter sentence than other defendants who were

younger at the time of the incidents and who long ago accepted responsibility for their conduct.

The following table is a sample of some of the defendants in this case and compares their ages

and eventual sentences to Mr. Dibee.

| Name | Approximate Age at First Arson | Number of Arsons | Sentence |
|---|---|---|---|
| Chelsea Gerlach | 21 | 10 | 108 months |
| Suzanne Savoie | 23 | 2 | 51 months |
| Joyanna Zacher | 23 | 2 | 92 months |
| Joseph Dibee | 29 | 2 | TBD |

Each defendant had their own facts and circumstances that led to their specific sentences

(and some engaged in conduct in addition to arsons), but each of those women was much

younger than Mr. Dibee at the time of the incidents. And none fled justice for more than a decade

like Mr. Dibee.

Mr. Dibee was one of the only adults in the room and had a college education, respected

career, and six-figure salary at a major tech company. A sentence below that of his co-

conspirators would be an unwarranted disparity.

C.      **Restitution**

The victim in Cavel West is entitled to $1,211,388.76 in restitution. The BLM Wild

Horse Corral in Litchfield is entitled to $122,497.60 in restitution. Accordingly, the Court should

**Government's Sentencing Memorandum**                                                          **Page 13**

order Mr. Dibee to pay $1,333,886.36, joint and severally with the other defendants, in restitution.

## IV.    Conclusion

Based on the foregoing, the government recommends that this Court impose a sentence of 87 months, followed by a 3 year term of supervised release, subject to the standard conditions, plus those outlined in the PSR; restitution in the amount of $1,333,886.36; and the $100 special assessment for the three counts of conviction.

Dated: October 26, 2022                          Respectfully submitted,

                                                 NATALIE K. WIGHT
                                                 United States Attorney


                                                 */s/ Quinn P. Harrington*
                                                 QUINN P. HARRINGTON, OSB#083544
                                                 Assistant United States Attorney

**Government's Sentencing Memorandum**                          **Page 14**